(No. 3029—

MARJORIE LEMING, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed October 9, 1940.*

*Rehearing denied November 12, 1940.*

WILLIAM JOHN GRANATA, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Claimant, Marjorie Leming, claims compensation from the State of Illinois, on the following grounds: That on the 7th day of December, 1935, she was employed by the State of Illinois, Department of Public Welfare at the Elgin State Hospital, as an attendant; that her earnings for the preceeding year were Six Hundred Forty-eight Dollars ($648.00), plus maintenance; that on said date, while treating a patient at that institution, and while acting in her capacity as an attendant, she was attacked by her patient, one Albert Long; that said attack consisted of the patient struggling, hitting

and spitting at the claimant; that said patient was infected with tuberculosis; that as a direct and proximate result thereof, the claimant became infected with that disease, and was forced to be confined to bed on the 19th day of January, 1936, and still had to be confined to bed for an indefinite known period, possibly several years; that her lungs will be permanently impaired, and that she will not be able to again perform the duties of an attendant.

Claimant also alleged that immediately after the occurrence of the above act, she reported the incident to Dr. M. A. Schiller, her superior officer; that the State of Illinois supplied her with complete hospitalization and medical care and attendance; that she has not received any salary since February, 1936; that at the time of the injury she was twenty-three years of age.

The claimant testified in this case and Dr. George A. Wiltrakis also testified. He said that he had checked claimant over physically including laboratory work-up for impressions of tuberculosis; that he took an X-ray of her chest in January, 1936; and that he found her to be acutely ill. He further testified that her pulse was around eighty; that she was running a temperature, and that her blood pressure was one hundred twenty-four over eighty. Dr. Wiltrakis described her condition quite completely. Claimant was given a bed rest, and had continued and frequent sputum examinations made. The first positive sputum examination was February 4th, in which tubercular baccilli demonstrated itself in the sputum. On the 17th of February, she was sent to Springbrook Sanatarium in North Aurora, Illinois, for pneumo thoraz therapy. Claimant remained in the hospital service until November 12, 1936. The doctor further testified that if the contact is with one tubercular patient in one day the person could not get tuberculosis; that tuberculosis, in his opinion, is a disease due to repeated contacts with tubercular infected patients. He also stated that tuberculosis might or could be caused from a connection between spitting on that date, connected with contacts of tubercular patients previous to that time and after that time up until the time symptoms of pulmonary tuberculosis became evident. The doctor further stated that in his opinion one exposure itself would not have been sufficient to cause contraction of tuberculosis; that continued contact immediately preceding and

following that occurrence with a person suffering from tuberculosis possible could cause the development. He could not say how close to December 7th, this condition could have existed; that the coughing and spitting might have aggravated a condition already present and slightly active; that the X-ray showed a definite involvement of the lung, which might have been present over a month, the exact length of time he was unable to state.

Dr. Kenneth G. Bulley, a tuberculosis expert, also testified. He testified that he had treated the claimant professionally and had seen her at regular intervals since the early part of July, 1936. In July, 1936 his diagnosis was pulmonary tuberculosis involving the upper part of the upper lobe of the left lung, and he prescribed a treatment.

During claimant's training at the Elgin State Hospital she worked in tuberculosis wards for about five months, doing general nursing. During this time she made beds and handled patients, handled sputum boxes and did servicing in these wards where tubercular patients were during those five months and following that she did hospital work, which included assisting the doctors in medical and surgical cases, and most of those patients were tubercular. She had been in bed since January 19, 1936 and had a cough extending over a period of three weeks' duration; she lost fifteen pounds in January, 1936, and positive sputum containing tuberculosis germs was found in February, 1936.

In answer to a hypothetical question, Dr. Bulley stated it was his opinion from the facts given and circumstances described that the claimant developed tuberculosis from her work, and from an altercation with Albert Long, a patient at the Elgin State Hospital, Elgin, Illinois. He also stated that it was not possible to estimate with accuracy how long the tubercular condition would prevail. On cross examination he stated that it was his opinion that the combined exposure by the claimant to tuberculosis and the incident of the altercation with a tubercular patient produced the pulmonary tuberculosis found in the claimant; that the altercation and the spitting in the face of the claimant in itself is sufficient to produce pulmonary tuberculosis, although it is not possible to prove from a medical standpoint that this particular incident did or did not cause the tuberculosis.

The same question is presented here as was presented in the case of *Margaret Crum* vs. *State of Illinois,* No. 3023, and the reasoning set forth in that opinion is adopted here and for such reasons, the claim will be denied.